BNDDUTY,CLOSED,INTERPRETER

# U.S. District Court
# Southern District of Florida (Miami)
# CRIMINAL DOCKET FOR CASE #: <u>1:24–mj–04212–MFE</u>–1

Case title: USA v. Sanjay Kaushik

Date Filed: 10/18/2024

Date Terminated: 10/18/2024

Assigned to: Magistrate Judge Marty
Fulgueira Elfenbein

## **Defendant (1)**

**Sanjay Kaushik**
13911–506
*YOB: 1967; Hindi*
*TERMINATED: 10/18/2024*

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Opening)** | |
|---|---|
| None | |

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Terminated)** | |
|---|---|
| None | |

| **Complaints** | **Disposition** |
|---|---|
| WARRANT\DISTRICT OF OREGON\COMPLAINT\ 18 U.S.C.§ 554 Smuggling Goods from the United States and 50 U.S.C. § 4819 Export Control Reform Act | |

## **Plaintiff**

**USA**                          represented by  **Noticing AUSA CR TP/SR**
Email: <u>Usafls.transferprob@usdoj.gov</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

1

*Designation: Retained*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/17/2024 | | Arrest of Sanjay Kaushik (yeh0) (Entered: 10/21/2024) |
| 10/18/2024 | 1 | Magistrate Judge Removal of Complaint from District of Oregon Case number in the other District 3:24–mj–226 as to Sanjay Kaushik (1). (kan) (Entered: 10/21/2024) |
| 10/18/2024 | 3 | WAIVER of Rule 5(c)(3)/Rule 40 Hearing by Sanjay Kaushik (yeh0) (Entered: 10/21/2024) |
| 10/18/2024 | 4 | COMMITMENT TO ANOTHER DISTRICT as to Sanjay Kaushik. Defendant committed to District of Oregon. Closing Case for Defendant. Signed by Magistrate Judge Marty Fulgueira Elfenbein on 10/18/2024. *See attached document for full details.* (yeh0) (Entered: 10/21/2024) |
| 10/21/2024 | 2 | Minute Order for proceedings held before Magistrate Judge Marty Fulgueira Elfenbein: Initial Appearance as to Sanjay Kaushik held on 10/21/2024. The parties stipulated to Bond recommendation: Sanjay Kaushik (1) Pretrial Detention – STIP with the right to revisit. Defendant ordered removed. Hindi Interpreter present. (Digital 13:36:19/14:54:19/15:09:36) Signed by Magistrate Judge Marty Fulgueira Elfenbein on 10/18/2024. (yeh0) (Entered: 10/21/2024) |

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

**SEALED**

for the

District of Oregon

24-MJ-4212-ELFENBEIN

FILED BY _____KAN_____ D.C.

**Oct 18, 2024**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. 3:24-mj-226 |
| SANJAY KAUSHIK | ) | |
| | ) | |
| | ) | |
| *Defendant* | ) | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*     SANJAY KAUSHIK                                                                        ,
who is accused of an offense or violation based on the following document filed with the court:

❏ Indictment     ❏ Superseding Indictment     ❏ Information     ❏ Superseding Information     ☑ Complaint
❏ Probation Violation Petition     ❏ Supervised Release Violation Petition     ❏ Violation Notice     ❏ Order of the Court

This offense is briefly described as follows:

Smuggling Goods from the United States in violation of 18 U.S.C. § 554 and Export Control Reform Act in violation of 50 U.S.C. § 4819

Date:     October 16, 2024

*Youlee Yim You*
*Issuing officer's signature*

City and state:     Portland, Oregon

Honorable Youlee Yim You, U.S. Magistrate Judge
*Printed name and title*

| **Return** |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____ |
| *Arresting officer's signature* |
| *Printed name and title* |

3

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
District of Oregon

**SEALED**

24-MJ-4212-ELFENBEIN

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| SANJAY KAUSHIK | ) | Case No.  3:24-mj-226 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

FILED BY _KAN_ D.C.

Oct 18, 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___9/1/2023 through 10/1/2024___ in the county of ___Washington___ in the
_____ District of ___Oregon___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 554 and 50 U.S.C. § 4819 | Smuggling Goods from the United States and Export Control Reform Act |

This criminal complaint is based on these facts:

See affidavit which is attached hereto and incorporated herein by this reference

☑ Continued on the attached sheet.

_/s/ By phone pursuant to Fed. R. Crim. P. 4.1_
*Complainant's signature*

BIS OEE Special Agent Matthew Peterson
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone at __6:27__ p.m.

Date: ___October 16, 2024___

*Youlee Yim You*
*Judge's signature*

City and state: ___Portland, Oregon___

Honorable Youlee Yim You, U.S. Magistrate Judge
*Printed name and title*

4

DISTRICT OF OREGON, ss:          AFFIDAVIT OF MATTHEW PETERSON

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Matthew Peterson, being duly sworn, do hereby depose and state as follows:

**<u>Introduction and Agent Background</u>**

1.      I am a Special Agent ("SA") with the U.S. Department of Commerce, Bureau of
Industry and Security ("BIS") assigned to the Office of Export Enforcement ("OEE") Resident
Office in Portland, Oregon.  I joined BIS OEE in February 2024, having previously been an SA
with Homeland Security Investigations ("HSI") since December 2010.  Since becoming an SA in
2010, I have specialized in criminal investigations related to the unlawful export of export-
controlled technology and associated money laundering.  I have a B.A. in Political Science and
an M.S. in Criminal Justice.  My formal law enforcement training includes successfully
completing the 23-week Criminal Investigations course at the Federal Law Enforcement
Training Center in Glynco, Georgia, which included specific courses on technology, weapons
proliferation, and money laundering investigations.  I have received advanced training in
counterproliferation investigations and have served as a government expert trial witness related
to technology smuggling and money laundering networks.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for
Sanjay KAUSHIK ("KAUSHIK") for violations of 18 U.S.C. § 554 (Smuggling) and 50 U.S.C.
§ 4819 (the Export Control Reform Act, or "ECRA").  As set forth below, I submit there is
probable cause to believe, and I do believe, that KAUSHIK, a citizen of India scheduled to travel
to the United States on October 17, 2024, is part of an illicit procurement network unlawfully
obtaining aviation goods and technology from the United States for entities in Russia.

**Affidavit of Matthew Peterson**                                          **Page 1**

## Applicable Laws

3.  The applicable laws are provided below:

    a.    50 U.S.C. § 4819 (Export Control Reform Act or ECRA) provides, in pertinent part:

(a)    Unlawful acts

    (1)    In general

        It shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of this subchapter or of any regulation, order, license, or other authorization issued under this subchapter, including any of the unlawful acts described in paragraph (2).

    (2)    Specific Unlawful Acts

        (A)    No person may engage in any conduct prohibited by or contrary to, or refrain from engaging in any conduct required by this subchapter, the Export Administration Regulations, or any order, license or authorization issued thereunder.

        (B)    No person may cause or aid, abet, counsel, command, induce, procure, permit, or approve the doing of any act prohibited, or the omission of any act required by this subchapter, the Export Administration Regulations, or any order, license or authorization issued thereunder.

        (C)    No person may solicit or attempt a violation of this subchapter, the Export Administration Regulations, or any order, license or authorization issued thereunder.

        (D)    No person may conspire or act in concert with one or more other persons in any manner or for any purpose to bring about or to do any act that constitutes a violation of this subchapter, the Export Administration Regulations, or any order, license or authorization issued thereunder.

        (E)    No person may order, buy, remove, conceal, store, use, sell, loan, dispose of, transfer, transport, finance, forward, or otherwise service, in whole or in part, or conduct negotiations to facilitate such activities for, any item exported or to be exported from the United States, or that is otherwise subject to the Export Administration

**Affidavit of Matthew Peterson**           **Page 2**

Regulations, with knowledge that a violation of this subchapter, the Export Administration Regulations, or any order, license or authorization issued thereunder, has occurred, is about to occur, or is intended to occur in connection with the item unless valid authorization is obtained therefor.

(F)     No person may make any false or misleading representation, statement, or certification, or falsify or conceal any material fact, either directly to the Department of Commerce, or an official of any other United States agency, including the Department of Homeland Security and the Department of Justice, or indirectly through any other person—

b.     18 U.S.C. § 554 (Smuggling goods from the United States), provides in pertinent part:

(a)     In General.—

Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States, shall be fined under this title, imprisoned not more than 10 years, or both.

**The Export Control Reform Act and Export Administration Regulations**

4.     In part, the ECRA provides permanent statutory authority for the Export Administration Regulations.  The ECRA provides, among its stated policy objectives, that "the national security and foreign policy of the United States require that the export, reexport and in-country transfer of items, and specific activities of United States persons, wherever located, be controlled . . . ."  50 U.S.C. § 4811(2).  To that end, the ECRA grants the President the authority to control "(1) the export, reexport, and in-country transfer of items subject to the jurisdiction of the United States, whether by United States persons or by foreign persons; and (2) the activities

**Affidavit of Matthew Peterson**                                                    **Page 3**

of United States persons, wherever located, relating to" specific categories of items and information. 50 U.S.C. § 4812(a). The ECRA further grants the Secretary of Commerce the authority to establish the applicable regulatory framework.

5. The Export Administration Regulations ("EAR"), 15 C.F.R. parts 730-774, were promulgated by BIS to regulate the export of goods, technology and software from the United States. Through the EAR, BIS reviews and controls the export from the United States to foreign countries of certain U.S. items. See 15 C.F.R. §§ 734.2-.3. In particular, BIS placed restrictions on the export and re-export of items that it determined could make a significant contribution to the military potential or nuclear proliferation of other nations or that could be detrimental to the foreign policy or national security of the United States. Under the EAR, such restrictions depended on several factors, including the technical characteristics of the item, the destination country, the end user and the end use of the item.

6. The most sensitive items subject to the EAR controls are identified on the Commerce Control List ("CCL") set forth in Title 15, Code of Federal Regulations, part 774, Supplement Number 1. Items listed on the CCL are categorized by an Export Control Classification Number ("ECCN"), each of which is subject to export control requirements depending on destination, end use, and end user of the item.

7. In response to Russia's 2022 invasion of Ukraine, the Department of Commerce imposed new license requirements on exports to Russia. As of February 24, 2022, any item classified under any ECCN in Categories 3 through 9 of the CCL required a license to be exported to Russia. See 87 Fed. Reg. 12,226 (Mar. 3, 2022). As of April 8, 2022, the license requirement for export to Russia was expanded to cover all items on the CCL. See 87 Fed. Reg. 22,130 (Apr. 14, 2022). These rules are codified in Title 15, Code of Federal Regulations,

**Affidavit of Matthew Peterson**                                              **Page 4**

Section 746.8, which states, "a license is required, excluding deemed exports and deemed reexports, to export, reexport, or transfer (in-country) to or within Russia or Belarus any item subject to the EAR and specified in any Export Control Classification Number (ECCN) on the CCL." Any requests for licenses to export items on the CCL to Russia are reviewed under a policy of denial. See 15 C.F.R. § 746.8(b).

8.    The EAR further impose, pursuant to the "Entity List" published at 15 C.F.R. part 744, Supp. No. 4, licensing and other requirements for exports to designated companies, businesses, research institutions, government and private organizations, individuals, and other types of legal persons that are subject to specific license requirements for the export, reexport, and/or transfer (in-country) of specific items. If a license is required for a transaction, a U.S. party to the transaction must submit an export license application prior to export.

9.    Under the ECRA, it is a crime to violate, attempt to violate, conspire to violate or cause a violation of any regulation, order, license or authorization issued pursuant to the statute, including the EAR. See 50 U.S.C. § 4819(a)(1). Willful violations of the EAR constitute criminal offenses under the ECRA, and carry a 20-year maximum term of imprisonment and up to a $1,000,000 fine. See 50 U.S.C. § 4819(b).

**Background on Russian Efforts to Obtain U.S. Aerospace Technology**

10.    In response to enhanced export controls and sanctions directed at Russia, I have observed that Russian procurement agents seek willing individuals and companies in countries with more favorable trade relations with the United States, such as India, the United Arab Emirates, and certain European countries, to procure U.S. technology on their behalf.

11.    For dual-use aerospace technology—technology that has a military and civilian application—I have observed, through other Russia-centric counterproliferation investigations,

**Affidavit of Matthew Peterson**                                                    **Page 5**

that Russian procurement agents work with intermediaries in third countries to develop a "cover" story explaining the purported civilian end-use of the aerospace components. Often, this explanation involves maintenance for a civilian aircraft, when in fact, evidence shows the items are intended for Russian defense organizations or entities that otherwise provide services to Russia's defense apparatus.

## Statement of Probable Cause

12. The United States, including OEE and HSI, is investigating a conspiracy involving KAUSHIK, a citizen of India and Managing Partner of AREZO AVIATION SERVICES LIMITED ("AREZO AVIATION") in India, Markus KALTENEGGER ("KALTENEGGER"), a citizen of Austria and the owner of YORACRAFT GMBH ("YORACRAFT") in Austria, and others to procure export-controlled aerospace components on behalf of Russian entities in violation of ECRA and U.S. smuggling statutes.

13. OEE's investigation began after YORACRAFT initiated the procurement of an export-controlled Inertial Navigation System ("INS") aviation component from a company based in the District of Oregon ("U.S. COMPANY 1"). Specifically, YORACRAFT requested from U.S. COMPANY 1 an LCR-100 Attitude and Heading Reference System (AHRS). The LCR-100 AHRS is controlled for export by the Department of Commerce under ECCN 7A103 because of its application in missile guidance systems. A valid export license is required to export the item from the United States to most countries, including Austria and India (subject to specified exceptions for use in civilian manned aircraft), or Russia.[1]

---

[1] The EAR contains an exception to the export license requirement for ECCN 7A103 items for the export, reexport, and in-country transfers for certain countries when "the commodities are for use in or for the 'production' of civil manned aircraft." 15 C.F.R. § 740.15(b)(2)(ii). This exception applies to export, reexport, and in-country transfers for Austria and India, but not to

**Affidavit of Matthew Peterson**                                                    **Page 6**

14.     I interviewed the owner of U.S. COMPANY 1 in Portland, Oregon, who informed me that the initial request for the export-controlled AHRS, referenced above, was received on or about September 6, 2023.  The owner of U.S. COMPANY 1 provided me with an email string reflecting this date, sent from KALTENEGGER (parts@yoracraft.com), requesting a quote for the AHRS.  On or about the same date, YORACRAFT negotiated a purchase order for $72,000 for the component with the "Ship to" address reflecting AREZO AVIATION in New Delhi, India, as provided in the purchase invoice below.  KAUSHIK was identified as the POC for AREZO AVIATION.



| Part Number | Description | Sales Condition Lead Time | Part Condition | Qty | Unit Price | Line Total |
|---|---|---|---|---|---|---|
| 145130-1002 | LCR-100 AHRS | Outright Stock | NE | 1 | $72,000.00 | $72,000.00 |

/ / /

---

Russia.  See id.; 15 C.F.R. § 740, Supp. No. 1 (identifying Austria and India as being in Country Group A:2, to which the ECCN 7A103 license exception applies).

**Affidavit of Matthew Peterson**                                                        **Page 7**

15.    According to an email thread regarding this purchase provided by the owner of U.S. COMPANY 1, the order was contingent upon the approval of an export license by the U.S. Department of Commerce.  As part of U.S. COMPANY 1's compliance program, the owner requested that the end-user—purportedly AREZO AVIATION in India—fill out and provide a Russia Sanctions certification document declaring its understanding of U.S. Export Administration Regulations and license requirements for commercial aircraft parts for Russia. The document indicates that the purchaser, KAUSHIK, declared that he would "not directly or indirectly export, reexport, or transfer (in country) items subject to the EAR, to Russia, Ukraine, or Belarus in violation of the EAR or other applicable laws."  A copy of the declaration is provided below, in pertinent part.

<div style="border:1px solid">

### Russia/Ukraine/Belarus
### Sanctions Certification

The undersigned (i) acknowledges the recent implementation of sanctions against Russia by the United Kingdom, the European Union, and the United States, including, without limitation, restrictions imposed by the U.S. Office of Foreign Assets Control and the U.S. Department of Commerce, which has implemented new Russia license requirements and licensing policies for commercial aircraft components, and expanded the existing Russian military end use and military end user restrictions under the Export Administration Regulations ("EAR"), and (ii) hereby certifies on behalf of the Purchaser of the order identified below, that with respect to such order, Purchaser will not directly or indirectly export, reexport, or transfer (in country) items subject to the EAR, to Russia, Ukraine, or Belarus in violation of the EAR or other applicable laws.

PO# __038__

I further certify that I am duly authorized to provide this certification.

Print Name: _Sanjay Kaushik_          Signature: _____

Title:_____Managing Partner_____          Date: _Sep-07-2023_

Purchaser Company Name: __Arezo Aviation Services__

Address: __S-456, Basement, opposite FORTIS HOSPITAL__
              __GREATER KAILASH II__
              __110048 New Delhi, India__

</div>

**Affidavit of Matthew Peterson**                                        **Page 8**

16.     Similarly, KAUSHIK signed an end-use certificate, dated September 7, 2023, acknowledging that export of the item was subject to the EAR.  KAUSHIK claimed that the item would be used in a civilian helicopter with tail number VT-IKR and serial number 22071, as provided below.

Dear Valued Customer:

**DATE:** Sep-07-2023

Export of these commodities is subject to either the United States Government's Export Administration Regulations ("EAR") or International Traffic in Arms Regulations ("ITAR"). Please complete and return this certification so we may complete the review of your purchase order or request for quotation.

**Section 1**

| PO No.: | PO Date: Sep-06-2023 |
|---|---|

Qty / Model number(s) / Description (attach additional sheet, if necessary):

P/N 145130-1002,  LCR-100 AHRS

**Section 2**

| Purchaser Information: | End-user Information: |
|---|---|
| Company: Yoracraft GmbH | Company: Arezo Aviation Services |
| Address: Weidegasse 8 | Address: S-456, Basement, opposite FORTIS HOSPITAL GREATER KAILASH II |
| City/Province: Stotzing/Burgenland | City/Province: New Delhi |
| Country/Postal: Austria/2443 | Country/Postal: India/110048 |
| Telephone: 00436505053295   E-Mail: parts@yoracraft.com  Contact Name: Markus Kaltenegger | Additional Information (if necessary): |

**Section 3**

Please provide a _complete and detailed_ statement of the end use and application of the product(s) listed above.
Specific End-Use (attach additional sheet if necessary):

VT-IKR  MSN 22071

**Signature of Authorized Company Representative**

Name (Printed):   Sanjay Kaushik

Signature: _____

17.     Based on the above information, U.S. COMPANY 1 applied for an export license from the U.S. Department of Commerce requesting authorization to export the AHRS to AREZO AVIATION in India.  The BIS export license, which confirmed the ECCN of 7A103, was initially approved.  However, BIS subsequently developed derogatory information regarding AREZO AVIATION.  That is, open-source trade data indicates that since July 2023, AREZO AVIATION has sent 53 shipments valued at over USD $6 million, in sum, to PDS AVIA LLC

**Affidavit of Matthew Peterson**                                                          **Page 9**

(discussed in greater detail further below), based in Moscow, Russia.  The trade records show that the top declared item, with Harmonized Tariff Schedule code 880730, is aircraft parts or goods, consistent with the nature of AREZO AVIATION's business.  Some of these exports to Russia appear to follow the receipt of aircraft components from the United States.  For example, U.S. export records show that, on or about September 15, 2023, AREZO AVIATION received a "shut off valve" from the U.S.  On October 17, 2023, commercial trade data indicates AREZO AVIATION exported a "shut off valve" to PDS AVIA LLC in Russia.

18.     Based on the concern at the time that AREZO AVIATION was transshipping U.S. aerospace goods and technology to Russia, OEE SAs requested that U.S. Customs and Border Protection Officers detain the impending export of the AHRS to India, which was successfully accomplished.

**Post-Shipment Verification Shows False Statements on Export License**

19.     OEE requested a post-shipment verification ("PSV") with KAUSHIK in India by a Department of Commerce Export Control officer ("ECO").  I have reviewed the report documenting the PSV with KAUSHIK on January 17, 2024, which provided, in summary and pertinent part:

- AREZO AVIATION is a reseller and trader of aircraft parts which imports approximately $5-$10 million in aircraft parts from the United States each year.

- KAUSHIK is aware of U.S. export laws and the requirements to declare all involved parties during the export license process.

- KAUSHIK has known Markus KALTENEGGER since 2019, when KALTENEGGER traveled to India regarding an aircraft transaction.  More recently, KAUSHIK approached KALTENEGGER to procure the export controlled AHRS.

- KAUSHIK stated that all his communications with KALTENEGGER are via WhatsApp.

**Affidavit of Matthew Peterson**                                                    **Page 10**

- KALTENEGGER brokered the procurement of the AHRS from U.S. COMPANY 1. KALTENEGGER reportedly signed the Russia sanctions certification, end-use certificate, and the export compliance statement for KAUSHIK, with KAUSHIK's permission.

- KAUSHIK stated that the AHRS was being procured for ZACO AVIATION, based in Prune, India, and acknowledged that the aircraft and end-user were different than the information provided in the end-use documentation. KAUSHIK added that KALTENEGGER randomly chose the tail number provided in the end-use documentation from an open-source aircraft registry.

20.     Based on the information received from the PSV with KAUSHIK, during which he acknowledged his understanding of U.S. export laws and engaged in activities contrary to the EAR, including the knowledge that false end-user information was provided in an export license, BIS revoked the license authorizing the export of the AHRS to India.

21.     Moreover, email evidence shows that KAUSHIK lied to the Department of Commerce ECO when he said that KALTENEGGER signed the export-control documents on his behalf, as emails show that KALTENEGGER sent the documents to KAUSHIK, who returned the documents signed with the false end-user information. During my search of KALTENEGGER email accounts authorized by United States Magistrate Judge Youlee Yim You, described in further detail below, I observed an email sent from KALTENEGGER (m.kaltenegger@yoracraft.com) to KAUSHIK (sanjay@arezoaviation.in) dated September 7, 2023, with three files related to the end-use of the export-controlled AHRS and an acknowledgement of Russian sanctions and export regulations. In the email, KALTENEGGER wrote: "Sanjay, can you please sign the attached forms for the AHRS processor." I reviewed the documents KALTENEGGER sent, which were not signed at the time. KAUSHIK returned the documents, signed, via email on or about the same day. U.S. COMPANY 1 used this information, including the apparent false end-user information, in the export license application

**Affidavit of Matthew Peterson**                                    **Page 11**

to the Department of Commerce. Moreover, this email shows that KAUSHIK lied to the Commerce ECO when he stated that KALTENEGGER signed the end-user information on his behalf.



**Probable Cause to Believe the AHRS was Procured for, and Intended for Transshipment to, Clients in Russia**

22.     On June 26, 2024, the Honorable Youlee Yim You, United States Magistrate Judge for the District of Oregon, authorized a search warrant for email accounts parts@yoracraft.com and m.kaltenegger@yoracraft.com, associated with YORACRAFT and believed to be used by KALTENEGGER (hereinafter "KALTENEGGER Email Accounts"). During my search of the KALTENEGGER Email Accounts, I observed emails indicating that aviation components procured from the United States, including the AHRS procured from U.S. COMPANY 1 in Oregon for $72,000, were intended for Russia-based end-users. Moreover, I observed emails indicating that KALTENEGGER and KAUSHIK have been engaged in a conspiracy to obtain aviation goods and technology from the United States for Russian end-users and split the profits with apparent Russian brokers involved in the illicit procurement.

**Affidavit of Matthew Peterson**                                                 **Page 12**

23.     For example, as noted above, KALTENEGGER inquired with U.S. COMPANY 1 about the AHRS on or about September 6, 2023.  Emails show that U.S. COMPANY 1 quoted the AHRS for $72,000 on the same day.  During my search of the KALTENEGGER Email Accounts, I observed an email sent on the same day from KALTENEGGER to himself but addressed to "Evgeniy" quoting the AHRS by part number for delivery to "Moscow."[2]  The email notes, in pertinent part (emphasis added by affiant):

Hi Evgeniy,

Here is an updated offer for the AHRS Processor in NE condition for the same price.

I can offer 1ea AHRS Processor P/N 145130-1002 in NE condition, in stock, exclusive freight charges, for US $152,000.00 each.

Freight costs for 1ea AHRS Processor P/N 145130-1002 to DAP[3] **Moscow** are US $4,200.00.

24.     The quote from U.S. Company 1 in Oregon is provided again below, for reference, which shows the same part number (145130-1002) and condition ("NE" or new) that KALTENEGGER quoted to Evgeniy for delivery to Moscow for over twice the purchase price.  Based on this, combined with other evidence, described below, I believe that the AHRS was intended for re-export to Russia from the initiation of the procurement with U.S. COMPANY 1 in Oregon.  Moreover, as described below, I believe that Evgeniy represents a Russian

---

[2] Evidence obtained from KALTENEGGER's emails shows that he uses an encrypted application called "SimpleX" with certain clients to discuss suspected illicit procurement.  I believe that KALTENEGGER copied and pasted this language to that chat application, perhaps using email as a spell-check.

[3] "DAP" is a standard international trade term that means "Delivered at Place" where the seller is responsible for delivery of the goods, ready for unloading, at the named place of destination.

**Affidavit of Matthew Peterson**                                    **Page 13**

company, PDS AVIA LLC, which as noted above was identified in the trade data associated

with AREZO AVIATION.



25.     Searches in the KALTENEGGER Email Accounts on "Evgeniy" revealed emails

with an individual identified as "Evgeniy BEZVERKHNIY."  For example, in an email dated

September 19, 2023, KALTENEGGER (m.kaltenegger@yoracraft.com) emailed en33@tuta.io

regarding the weight and dimensions of an apparent shipment.  According to the email header

information, en33@tota.io is associated with "Evgeniy BEZVERKHNIY, as provided below.



**Affidavit of Matthew Peterson**                                                    **Page 14**

26.     Further searches in the KALTENEGGER Email Accounts for emails involving

en33@tota.io revealed several emails with contracts or other files indicating the sale of U.S.-

origin aircraft parts to Russia.  For example, in an email dated July 19, 2023, from en33@tota.io

to KALTENEGGER (m.kaltenegger@yoracraft.com) and KAUSHIK (sanjay@arezoaviation.in)

titled "Contract and specs for components paid," BEZVERKHNIY sent three files.  One of the

files, titled, "Supply_contract_Areza[sic]_Aviation_-_PDS Avia1-1_sign.pdf," which I have

reviewed, is a supply contract dated June 30, 2023, written in English and Russian, outlining the

supply of "aviation spare parts, tools, interior items and other equipment" from AREZO

AVIATION SERVICES in India to PDS AVIA LLC in Moscow, Russia.  The document is

signed by Maria Nadezhina (Nadezhina Maria) on behalf of PDS AVIA LLC in Russia and

Sanjay KAUSHIK on behalf of AREZO AVIATION SERVICES in India.  Relevant portions of

the contract are provided below for reference.



**SUPPLY CONTRACT - №006/2023**

**New Delhi**                                                    **30 June 2023**

**Arezo Aviation Services**, a Partnership Company of the Republic of India, hereinafter referred to as the «**Supplier**», on the one hand, and a **PDS AVIA, Limited Liability Company ("PDS AVIA, LLC")** whose principal place of business is at 17B Butlerova str., office 1B/5, Konkovo municipal district, Moscow 177342, Russian Federation, represented by **General Director Nadezhina Maria Fedorovna**, acting on the basis of **Charter**, hereinafter referred to as «**Customer**», on the other hand, concluded the present Contract on the following:

**Arezo Aviation Services**, Компания-партнер Республики Индия, именуемая в дальнейшем «**Поставщик**», с одной стороны, и Общество с ограниченной ответственностью «**ПДС АВИА**» (**ООО «ПДС АВИА**»), основное место деятельности которого находится по адресу: 117342, Россия, г. Москва, вн.тер.г. муниципальный округ Коньково, Бутлерова ул., д. 17Б, помещ. 1Б/5, в лице **Генерального директора Надежиной Марии Федоровны**, действующего на основании **Устава**, именуемого в дальнейшем «**Заказчик**», с другой стороны, заключили настоящее Соглашение о нижеследующем:

**1.  SUBJECT OF CONTRACT. ПРЕДМЕТ ДОГОВОРА**

1.1. Supplier delivers on a commercial basis to Customer aviation spare parts, tools, interior items and other equipment, consumables used on aircraft (further – the Goods).

**Affidavit of Matthew Peterson**                                    **Page 15**



**CUSTOMER:**

**PDS AVIA, LLC**

**Legal Address & Post Address:**
17B Butlerova str., office 1B/5, Konkovo municipal district, Moscow 177342, Russian Federation

**On behalf of Customer:**

**Nadezhina Maria Fedorovna**

“ПДС АВИА”
PDS AVIA, LLC
МОСКВА

**SUPPLIER:**

**Arezo Aviation Services**

Address: S-456, Basement, Opposite Fortis Hospital, Greater Kailash II, 110048 New Delhi, India
Bank Name: INDUSIND BANK LIMITED, (NEHRU PLACE BRANCH)
SHOP NO-G5,G-6,G-7,SKIPPER HOUSE,BUILDING NO-62-63, NEHRU PLACE, NEW DELHI- 110019, INDIA
BRANCH CODE. : 0370
ACCOUNT NO. : 259999720014
RTGS/ NEFT IFSC. : INDB0000370

**On behalf Supplier:**

**Sanjay Kaushik**

27. One of the other three files attached to the email, titled “SPECIFICATION No1.pdf,” is a specification of one of the aviation items related to the contract, described as “P/N 822-2504-003 AIR DATA COMPUTER” for $150,941.00, similarly delivered to PDS-AVIA, LLC in Moscow, Russia.

/ / /

/ / /

/ / /

/ / /



28.     A review of the KALTENEGGER Email Accounts revealed that he procured the part referenced above, 822-2504-003, from a company (hereinafter, "U.S. COMPANY 2") based in Washington State in July 2023.

29.     I also observed an email sent from BEZVERKHNIY (en33@tuta.io) to KAUSHIK (sanjay@arezoaviation.in) and KALTENEGGER (m.kaltenegger@yoracraft.com) dated July 26, 2023, titled "Re: PI-21." Attached to the email is a file titled "N-PDS – PI.21.pdf." I reviewed the file, which appears to be an invoice for an Adaptive Flight Display, part number 822-2332-410, for 48,025,100.00 Indian Rupees (approximately US $572,059.34) from AREZO AVIATION SERVICES in India to PDS AVIA, LLC in Moscow, Russia. I similarly searched this part number in the KALTENEGGER Email Accounts, and observed it was also procured from U.S. COMPANY 2 in Washington in July 2023.

30.     KALTENEGGER and KAUSHIK appear to split the profit from the illicit sales to Russia. In an email dated September 11, 2023, from KALTENEGGER

**Affidavit of Matthew Peterson**                                                 **Page 17**

(m.kaltenegger@yoracraft.com) to KAUSHIK (sanjay@arezoaviation.in) titled "Commission Evgeniy," KALTEGGER wrote: "Here we go, my friend." Attached to the email is a file titled "Commission Evgeniy Summery[sic].xlsx." The file is a spreadsheet of the apparent commission related to the procurement of several items from the United States totaling over US $1.7 million. As the spreadsheet outlines, KALTENEGGER and KAUSHIK appear to evenly split their share of the commission with BEZVERKHNIY, who, as described above, appears to be a broker for the Russian company PDS AVIA, LLC. The AHRS purchased from U.S. COMPANY 1 in Oregon on or about September 6, 2023 is included on the commission spreadsheet, identified by part number 145130-1002 and described as "LCR-100 AHRS," although, based on the date of this email, there was not yet a commission split between the three. A snippet of the spreadsheet is provided below as an example.

| P/N | Description | Purchase Price | Sales Price [to end customer] | Mark-Up [exclusive freight] | Freight costs | Freight included in sales price yes/no | Commission | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Markos | 4,782 $ |
| 3876280-1 | UNIT, APU IGNITION | 15,000 $ | 19,500 $ | 4,500 $ | 2,000 $ | NO | Evgeniy | 2,250 $ |
| | | | | | | | Sanjay | 1,125 $ |
| | | | | | | | Markus | 1,125 $ |
| 822-2504-003 | AIR DATA COMPUTER ADC-3020 | 98,000 $ | 121,520 $ | 23,520 $ | 4,000 $ | | Evgeniy | 11,760 $ |
| | | | | | | | Sanjay | 5,880 $ |
| | | | | | | | Markus | 5,880 $ |
| C47329-012A | HORIS. STAB TRIM ECU [Exchange] | 38,000 $ | 58,500 $ | 20,500 $ | 4,000 $ | NO | Evgeniy | 10,250 $ |
| | | | | | | | Sanjay | 5,125 $ |
| | | | | | | | Markus | 5,125 $ |
| 822-1577-303 | Adaptive Flight Display 5220 (AFD 5220) [Exchange] | 45,000 $ | 58,500 $ | 13,500 $ | 3,500 $ | NO | Evgeniy | 6,750 $ |
| | | | | | | | Sanjay | 4,710 $ |
| | | | | | | | Markus | 4,710 $ |
| 822-2332-410 | DISPLAY, ADAPTIVE FLIGHT AFD-6520 | 500,000 $ | 560,000 $ | 60,000 $ | 4,000 $ | NO | Evgeniy | 30,000 $ |
| | | | | | | | Sanjay | 15,000 $ |
| | | | | | | | Markus | 15,000 $ |
| 822-1991-002 | Common Computing Module 5110 | 64,213 $ | 72,560 $ | 8,347 $ | 4,000 $ | NO | Evgeniy | |
| | | | | | | | Sanjay | 4,174 $ |
| | | | | | | | Markus | 4,174 $ |
| 424025-1 | VALVE, STARTER AIR | 95,349 $ | 118,233 $ | 22,884 $ | 3,500 $ | NO | Evgeniy | 11,442 $ |
| | | | | | | | Sanjay | 5,721 $ |
| | | | | | | | Markus | 5,721 $ |

31. Additionally, I searched iCloud accounts associated with KAUSHIK and KALTENEGGER pursuant to warrants authorized by Magistrate Judge You, as further described

**Affidavit of Matthew Peterson**                  **Page 18**

below. During my search, I observed in the iCloud accounts additional evidence related to the AHRS procured from U.S. COMPANY 1 in Oregon. In KALTENEGGER's iCloud account, I observed an updated spreadsheet that appears to offer more detail than I observed in the email accounts. In the below spreadsheet, titled "Evgeniy Workprogress.xlsx," KALTENEGGER appears to track if each party has received the funds for a particular part, and who the "leader" for sourcing and purchasing the price is. The "Funds received by" column includes PDS, which, based on the above information and contracts, I believe is PDS AVIA LLC, based in Moscow, Russia, of which Evgeniy BEZVERKHNIY appears to be associated.

32.    The spreadsheet includes the AHRS purchased by U.S. COMPANY 1 in Oregon in September 2023, and indicates that the funds were received by PDS (AVIA), Sanjay (KAUSHIK), and Markus (KALTENEGGER). In a column to the far right of the AHRS, identified its full part number, 145130-1002, is a note that annotates: "hold by cu[s]toms."[4]

| Part No | Description | Qty | Parts Leader | | Funds received by | | |
|---|---|---|---|---|---|---|---|
| | | | sourcing | purchase | PDS | Sanjay | Markus |
| 100-0024-01 | AVDS NODE CIMS | 1 | Markus | Markus | | yes | yes |
| 822-0044-001 | FLIGHT CONTROL PANEL | 1 | Markus | Markus | yes | yes | yes |
| 304634-2 | PLUG, IGNITOR APU | 4 | Markus | Markus | yes | yes | yes |
| 5010520-1 | Brake Assy | 1 | Markus | Markus | yes | yes | yes |
| 140-153 | WHEEL SPEED (ANTI-SKID) TRANSDUCER | 1 | Sanjay | Markus | yes | yes | yes |
| GC584-1001-4 | CONTROLLER, WINDSHIELD TEMP | 1 | Sanjay | Markus | yes | yes | yes |
| 3876280-1 | UNIT, APU IGNITION | 1 | Sanjay | Markus | yes | yes | yes |
| 822-2504-003 | AIR DATA COMPUTER ADC-3020 | 1 | Sanjay | Markus | yes | yes | yes |
| C47329-012A | HORIS. STAB TRIM ECU [Exchange] | 1 | Sanjay | Markus | yes | yes | yes |
| 822-1577-303 | Adaptive Flight Display 5220 (AFD 5220) [Exchange] | 1 | Sanjay | Markus | yes | yes | yes |
| 145130-1002 | LCR-100 AHRS | 1 | Markus | Markus | yes | yes | yes |

[4] The AHRS appears much further down in the spreadsheet, so that snippet is added here for reference.

**Affidavit of Matthew Peterson**                                               **Page 19**

33.     The information that the money for the AHRS was received from PDS is consistent with screenshots found in KAUSHIK's iCloud account showing that he received several credits from PDS AVIA in September 2023 in his AREZO AVIATION bank account, as highlighted in the below red box.



34.     Relatedly, I observed a spreadsheet in KALTENEGGER's iCloud account, titled "145130-1002 AHRS Processor.xlsx," that appears to focus only on the AHRS purchased from U.S. COMPANY 1 in Oregon.  The spreadsheet notes that "$126,185.32" was received from "Sanjay" for the AHRS.  I searched the iCloud data for references to $126,185.32, and identified a bank wire receipt for a payment of $126,185.32 from AREZO AVIATION to YORACRAFT, dated October 25, 2023, as provided below.

/ / /

/ / /

/ / /

/ / /

**Affidavit of Matthew Peterson**                                                            **Page 20**



35. The spreadsheet titled "145130-1002 AHRS Processor.xlsx" notes that "Freight costs for 1ea AHRS Processor P/N 145130-1002 to DAP Moscow are US $4.200,00" – a similar notation to what KALTENEGGER offered in the September 6, 2023, email addressed to "Evgeniy," described above. Additionally, the spreadsheet appears to offer an update on the profit split for this item, with Evgeniy receiving the biggest portion, provided below.

| Commission | Markus | Sanjay | Evgeniy | Total |
|---|---|---|---|---|
| agreed on | 4,406.50 $ | 4,406.50 $ | 8,813.00 $ | 17,626.00 $ |

36. Searches in the iCloud accounts revealed contact information for Evgeniy BEZVERKHNIY, which show he is associated with two phone numbers with a +7 country code. Based on my training, experience, and research, I know that +7 is the country code for Russia. According to my review of BEZVERKHNIY's email domain website, meridian-avia.com, the entity, JSC MERIDIAN AIRLINES, is based in Moscow, Russia.

/ / /

/ / /

**Affidavit of Matthew Peterson**                                           **Page 21**

**Evgeniy Bezverkhniy**

Email Addresses

evgeniy.skv@mail.ru INTERNET

bezverkhniy@meridian-avia.com INTERNET

Phone Numbers

+7 495 500 3221 WORK

+7 916 215 2354 CELL

JSC Meridian Airlines 117335, Moscow, Garibaldi Street, 15,
teL: +7 495 500 3221 fax: +7 495 589 9756, comm@meridian-avia.com

37. In other emails, KALTENEGGER and KAUSHIK conspired to ship aviation goods to Russia that were obtained in the United States. I observed an email from KALTENEGGER (m.kaltenegger@yoracraft.com) to KAUSHIK (sanjay@arezoaviation.in) dated May 18, 2023, in which KALTENEGGER wrote, in pertinent part (emphasis added by affiant):

> Hi Sanjay,
>
> Here is the AWB 6418-6361-9442 for P/N 32156622-2,
> PRESSURE REGULATOR VALVE, S/N 1754, OH OUTRIGHT
> from [U.S. company based in California].
>
> We should keep it together in Delhi and send it together with the other consolidated to DAP **Moscow**.

38. Moreover, there is probable cause to believe KAUSHIK was aware of U.S. trade restrictions related to exports of aviation products to Russia. For example, KAUSHIK appears to

**Affidavit of Matthew Peterson**                                    **Page 22**

send emails to KALTENEGGER, regarding warnings about "international restrictions" against Russia. More specifically, I observed an email sent from KAUSHIK (sanjay@arezoaviation.in) to KALTENEGGER (m.kaltenegger@yoracraft.com) dated December 10, 2022, with a forwarded message that appears to outline KAUSHIK's efforts to do business with Russian entities despite warnings of "international restrictions." The substance of the forwarded message from KAUSHIK reads in pertinent part (emphasis added by affiant):

> Hello Mikhail
>
> …It was nice meeting with you at MEBA Dubai.[5] **As discussed for Russian market**, if you could generate business for western fleet like Gulfstream all series, Bombadier all series, Beechcraft all model and Dassault all series . We can support on these for all engines, APUs, and spares.

"Mikhail" (Mikhail.alenkin@arcosjet.com) replied on or about December 9, 2022, in pertinent part (emphasis added):

> Hello Sanjay,
>
> It was nice to meet you during MEBA and discuss about your company and potential cooperation in case of spare part requirements. As I told you **we are not working in the Russian market any more due to international restrictions** and closed our office there but I will be happy if I can assist you with any other business.

In response, KAUSHIK responded on or about the same day, noting that he understood the situation, but only wanted an introduction to operators in the Russian market:

> I understand situations[sic]. My only say to introduce our company or give me contact no of operators there. I hope you understand.

/ / /

---

[5] This is likely a reference to the Middle East Business Aviation Association (MEBAA) Air Show, which is held in Dubai, United Arab Emirates every two years. The MEBAA Air Show is known to attract aviation vendors and brokers from all over the world.

**Affidavit of Matthew Peterson** **Page 23**

39.     While reviewing KAUSHIK's iCloud account, I also observed an apparent screenshot from KAUSHIK's phone in which he appears to be in a video chat with an unidentified male.  Captured on his phone screen, provided below, is an article titled, "US Threatens Russian Neighbor."  The article, dated April 25, 2023, discusses potential consequences for Kazakhstan in relation to helping Russia evade U.S. sanctions.  The screenshot is dated April 26, 2023.



**Probable Cause Regarding Additional Transshipments to Entity-Listed Russian Clients**

40.     On August 23, 2024, Judge Youlee Yim You authorized a search warrant for iCloud accounts associated with KAUSHIK (Apple ID SANJAY2018K@ICLOUD.COM) and KALTENEGGER (Apple ID M.KALTENEGGER@YORACRAFT.COM).  During my review of information associated with these respective iCloud accounts, I observed additional evidence of a conspiracy between KAUSHIK, KALTENEGGER, and others to obtain U.S.-origin aviation goods for end-users in Russia, including transactions following KAUSHIK's PSV in India.  For example, I observed in KAUSHIK's iCloud account several contracts, payments, and other

**Affidavit of Matthew Peterson**                                          **Page 24**

documents associated with a Russian entity, AIRCOMPANY NORTH-WEST LLC, based in Saint Petersburg, Russia.

41.     AIRCOMPANY NORTH-WEST LLC was added to the U.S. Department of Commerce Entity List on December 7, 2023, pursuant to §744.11 of the EAR, because it was, according to information published in Federal Register Vol. 88, No. 234: "believed to have procured and transshipped U.S.-origin avionics equipment to Russia, including to governmental entities and military end users, both before and after Russia's invasion of Ukraine on February 24, 2022. . . . BIS imposes a license requirement for all items subject to the EAR and will review license applications under a presumption of denial."

42.     Yet, I observed numerous documents showing that YORACRAFT and AREZO AVIATION had procured U.S.-origin aviation goods subject to the EAR for AIRCOMPANY NORTH-WEST LLC following the Entity Listing.  For example, I observed the following Purchase Order in KAUSHIK's iCloud reflecting the purchase of part number 612C9500-007 for $291,000, described as a "PRSOV1," for delivery to AIRCOMPANY NORTH-WEST LLC in Russia.  As described below, "PRSOV" is an aviation acronym for a "Pressure Regulating Shut-Off Valve."  The date of the purchase order, provide below, is March 27, 2024—after AIRCOMPANY NORTH-WEST LLC was added to the Entity List.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Affidavit of Matthew Peterson**                                                                 **Page 25**



**Aircompany North-West LLC**
Konstitutsii Square 7, Build A, Office 71H
196191 - Saint-Petersburg
Russian
VAT Number: 1101077330

# Purchase Order
**AOG**

**AREZO AVIATION SERVICES**

| | |
|---|---|
| Order ref. | **2024-1030 R0** |
| Shipping | Regular |
| Date | 27.03.2024 |
| Incoterms | DAP |

Ship to **Aircompany North-West LLC**
Konstitutsii Square 7, Build A, Office 71H
196191 - Saint-Petersburg
Russian

| Reference | Description | Qty | Unit Price | Total w/o VAT |
|---|---|---|---|---|
| Type **Purchase** | | | | |
| 612C9500-007 | PRSOV1 | 1 | 285 000,00 | 285 000,00 USD |
| AOG freight | charges | 1 | 6 000,00 | 6 000,00 USD |
| | | | Total w/o VAT | **291 000,00** USD |

43. Searching the iCloud accounts for this part number, I found documents indicating that KALTENEGGER had procured the part from a U.S. company in New Jersey for $225,000 on or about the same date, as provided below.

YORACRAFT

# PURCHASE ORDER

Yoracraft
Weidegasse 8,
Stotzing 2443 Austria

| | |
|---|---|
| Date | 27 Mar 2024 |
| PO # | PO-15 |
| Original Date | 27 Mar 2024 |
| Buyer Name | Markus Kaltenegger |
| Buyer Phone | +43 650 5053 295 |
| Buyer Email | parts@yoracraft.com |

**VENDOR**
[redacted] NJ 07751 United States
ATTN : [redacted]
Ph : +1 [redacted]

**SHIP TO**
Yoracraft GmbH
Gebruder Weiss GmbH
Wiener Strasse 26, Ramp 84/85, Air/Sea
Maria Lanzendorf 2326 Austria
ATTN [redacted]
Email [redacted]

| SHIP METHOD | ACCT # | SHIPPING TERMS | PORT/DEST | TERMS |
|---|---|---|---|---|
| | | | | |

| LINE | PART # | DESCRIPTION | COND | QTY | UOM | UNIT PRICE | TOTAL |
|---|---|---|---|---|---|---|---|
| 1 | 612C9500-007 | PRSOV | RP | 1 | EA | $225,000.00 | $225,000.00 |
| | Purchase Type: Outright | | | | | | |
| | | | | | | SUBTOTAL | $225,000.00 |
| | | | | | | TOTAL | $225,000.00 |



44.     A packing list found in KALTENEGGER's iCloud account shows that the
component appears to have been sent to AREZO AVIATION in India in April 2024.



45.     Relatedly, I observed in KAUSHIK's iCloud account Indian Customs documents
dated April 2024, showing this same part number (612C9500-007), identified as a "Pressure
Regulating Shut Off Valve," also known as a PRSOV, sent from AREZO AVIATION
SERVICES in India to AIR COMPANY NORTH-WEST LLC in Russia, as provided below.
Based on my research, this is an accurate description of the item, which is in fact an aircraft
PRSOV manufactured by a company based in Illinois.  While I have not received a BIS license
determination for this item, because of its application in aircraft, as documented in the Indian
Customs document, I believe it is subject to the EAR and accordingly, requires a license for re-
export to AIRCOMPANY NORTH-WEST LLC.

**Affidavit of Matthew Peterson**                                    **Page 27**



46.     Moreover, I observed in KAUSHIK's iCloud account a spreadsheet detailing the status of his procurement for AIRCOMPANY NORTH-WEST LLC, which shows that the PRSOV with part number 612C9500-007, highlighted below, was one transaction of many following AIRCOMPANY NORTH-WEST LLC's addition to the Entity List.

**AIRCOMPANY NORTH-WEST LLC**

| Sl. No | PI No. | PI Date | P/N | Description | Credit Amt. |
|---|---|---|---|---|---|
| 1 | PI-010 | 23.06.2023 | D51615-142-090 | 512 WPS MULT | 4776685 |
| 2 | PI-010 | 23.06.2023 | DK120/90 | BEACON | 0 |
| 3 | PI-036 | 06.09.2023 | GT411-1700-9 | PCU ALIERON | 9678500.00 |
| 4 | PI-036 | 06.09.2023 | GL511-3105-1 | GCU GENERAT | 14392000.00 |
| 5 | PI-044 | 21.09.2023 | 30089-006 | DC Generator | 38907800.00 |
| 6 | PI-044 | 21.09.2023 | Forwarding | | 299950.00 |
| 7 | PI-045 | 21.09.2023 | 30089-006 | DC Generator | 19582450.00 |
| 8 | PI-052 | 18.10.2023 | 2704554-3 | *STARTER APU* | 7489405.00 |
| 9 | PI-052 | 18.10.2023 | GT411-6001-9 | PCU, MULTI FU | 11319000.00 |
| | | | | **Total** | **106445790.00** |

**Adjusted parts**

| Sl. No | PI No. | PI Date | P/N | Description | Amount |
|---|---|---|---|---|---|
| 1 | PI-064 | 08.12.2023 | 30089-006 | DC Generator | 4727250.00 |
| 2 | PI-073 | 19.01.2024 | 1288A0000-02 | STEERING ACT | 5439000 |
| 3 | PI-077 | 09.02.2024 | fan blade | CUSTOME DU | 729725.00 |
| 4 | PI-081 | 16.02.2024 | 3205046-4 | Valve | 2489650.00 |
| 6 | PI-090 | 19.03.2024 | 612C9500-007 | PROVE (VALVE | 24982350.00 |
| 7 | PI-014 | 19.07.2024 | 822-2332-410 | DISPLAY ADAF | 42503760 |
| 8 | PI-015 | 19.07.2024 | MP-000063-001 | HYDROLOCK | 14170788 |
| 9 | PI-016 | 29.07.2024 | MP-000063-001 | HYDROLOCK | 47236.00 |
| 10 | PI-018 | 06.08.2024 | FREIGHT FORWARDING CHARGI | | 1290900.00 |
| | | | | **Total** | **96380659.00** |

**Affidavit of Matthew Peterson**                                                       **Page 28**

## Conclusion

47.     Based on the foregoing, I respectfully submit that I have probable cause to believe, and I do believe, that Sanjay KAUSHIK is part of an illicit procurement network unlawfully obtaining export-controlled aviation goods and technology from the United States for entities in Russia, including sanctioned entities reportedly involved in providing aviation goods to the Russian Government or military.  I believe the evidence shows that KAUSHIK conspires with his Austria-based associate, Markus KALTENEGGER, and others to facilitate the purchase, shipping, and negotiation of aviation goods from the United States for re-export to Russian clients, splitting the profit from such illicit sales, in violation of the ECRA and smuggling statutes.  In summary I believe the above evidence shows that:

- On or about September 6, 2023, KALTENEGGER purchased an export-controlled AHRS from U.S. COMPANY 1 in Oregon, and on the same day, quoted the same item by part number to "Evgeniy," later identified as Evgeniy BEZVERKHNIY, for delivery to "Moscow" for more than double the price.

- Emails sent from BEZVERKHNIY to KALTENEGGER and KAUSHIK reflect contracts with PDS AVIA LLC in Moscow, Russia for U.S-origin aviation components.

- Emails between KALTENEGGER and KAUSHIK show end-user documentation indicating that the AHRS purchased from U.S. COMPANY 1 in Oregon would be used for a helicopter in India, which KAUSHIK later stated to a U.S. Department of Commerce ECO that KALTENEGGER fabricated and that had signed on his behalf.  However, email evidence shows that KAUSHIK signed the false end-user information.

- An email from KALTENEGGER to KAUSHIK in May 2023 discussed consolidating an aviation component purchased from a company in California with a shipment to Moscow, Russia.

- An email sent from KAUSHIK to KALTENEGGER appears to show KAUSHIK pursuing aviation business in Russia despite warnings of "international restrictions."

**Affidavit of Matthew Peterson**                                    **Page 29**

- Emails between KALTENEGGER and KAUSHIK show the shared profit between them and BEZVERKHNIY for aviation parts that appear to be destined for Russia, including the AHRS purchased from Oregon.

- A spreadsheet detailing the AHRS transaction shows that funds had been received for the item from PDS AVIA, which evidence shows is based in Russia.

- Financial information found in iCloud data associated with KAUSHIK and KALTENEGGER shows that KAUSHIK paid KALTENEGGER $126,185.32 after receiving incoming financial credits from PDS AVIA, based in Russia.

- KAUSHIK appears to continue to supply aviation goods and technology to AIRCOMPANY NORTH-WEST LLC, a Russia-based company added to the Department of Commerce Entity List for supplying aviation items to the Russian Government and military, even after he met with a Department of Commerce ECO in January 2024.

48.     Based on the above evidence, I respectfully request that the Court issue a criminal complaint and arrest warrant for Sanjay KAUSHIK for 18 U.S.C. § 554 (Smuggling) and 50 U.S.C. § 4819.  On October 15, 2024, I learned from an HSI Special Agent that KAUSHIK has a reservation to travel to the United States, scheduled to arrive in Miami, Florida, on the morning of October 17, 2024.

49.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Greg Nyhus, and AUSA Nyhus advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

### Request for Sealing

50.     It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant.  I believe that sealing these documents is necessary because the information is relevant

**Affidavit of Matthew Peterson**                                                    **Page 30**

to an ongoing investigation, including into KALTENEGGER's activities, and any disclosure of the information at this time may cause flight from prosecution, cause destruction of or tampering with evidence, or otherwise seriously jeopardize an investigation. Premature disclosure of the affidavit, the criminal complaint, and the arrest warrant may adversely affect the integrity of the investigation.

*By phone pursuant to Fed. R. Crim. P. 4.1*
MATTHEW PETERSON
Special Agent, OEE

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 6:27 pm on October 16, 2024.

_____
HONORABLE YOULEE YIM YOU
United States Magistrate Judge

**Affidavit of Matthew Peterson** **Page 31**

# MINUTE ORDER

Page 1

## Magistrate Judge Marty F. Elfenbein

**Atkins Building Courthouse - 5th Floor**   Date: 10/18/2024  Time: 1:30 p.m.

Defendant: Sanjay Kaushik   J#: 13911-506   Case #: 24-MJ-4212-ELFENBEIN (SEALED)

AUSA: Sean Cronin   Attorney: _____

Violation: WARR\DIST. OF OREGON\COMPLAINT\SMUGGLING GOODS FROM THE U.S. & EXPORT CONTROL REFORM   Surr/Arrest Date: 10/17/2024   YOB: 1967

Proceeding: Initial Appearance   CJA Appt: _____

Bond/PTD Held: ☐ Yes  ☐ No   Recommended Bond: _____

Bond Set at: _____   Co-signed by: _____

☐ Surrender and/or do not obtain passports/travel docs

☐ Report to PTS as directed/or _____ x's a week/month by phone: _____ x's a week/month in person

☐ Random urine testing by Pretrial Services _____

☐ Treatment as deemed necessary

☐ Refrain from excessive use of alcohol

☐ Participate in mental health assessment & treatment

☐ Maintain or seek full-time employment/education

☐ No contact with victims/witnesses, except through counsel

☐ No firearms

☐ Not to encumber property

☐ May not visit transportation establishments

☐ Home Confinement/Electronic Monitoring and/or Curfew _____ pm to _____ am, paid by _____

☐ Allowances: Medical needs, court appearances, attorney visits, religious, employment

☐ Travel extended to: _____

☐ Other: _____

Language: Hindi

**Disposition:**

Defendant advised of rights and charges.

Complaint unsealed

Defendant sworn, APPD assist as a friend of the Court for removal proceedings. Deft waived removal Hearing. Parties stipulate to PTD with the right to revisit no hrg held. Defendant ordered removed.

Time from today to _____ excluded from Speedy Trial Clock

**NEXT COURT APPEARANCE** Date: _____  Time: _____  Judge: _____   Place: _____

Report RE Counsel: _____

PTD/Bond Hearing: _____

Prelim/Arraign or Removal: _____

Status Conference RE: _____

D.A.R. 13:36:19, 14:54:19, 15:09:36   Time in Court: 37 mins

s/Marty F. Elfenbein   Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
Case No: 24-MJ-4212-ELFENBEIN ~~(SEALED)~~

United States of America
     Plaintiff,
    v.

                          Charging District's Case No.  24-mj-226

Sanjay Kaushik,
     Defendant.

_____ /

### WAIVER OF RULE 5 & 5.1 REMOVAL/IDENTITY HEARINGS

I understand that I have been charged in another district, the **District of Oregon.**

I have been informed of the charges and of my rights to:

(1)     retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)     an identity hearing to determine whether I am the person named in the charges;

(3)     production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)     a preliminary hearing within 14 days of my first appearance if I am in custody and 21 days otherwise — unless I am indicted — to determine whether there is probable cause to believe that an offense has been committed;

(5)     a hearing on any motion by the government for detention;

(6)     request transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my rights to: **(check those that apply)**

☐ An identity hearing and production of the warrant.

☐ A preliminary hearing.

☐ A detention hearing in the Southern District of Florida.

☒ An identity hearing, production of the warrant, and any preliminary or detention hearing to which I may be entitled to in this district. I request that those hearings be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date: 10/18/2024

_____
Defendant's Signature

_____
Marty F. Elfenbein
United States Magistrate Judge

## United States District Court
## Southern District of Florida
Case No. 24-MJ-4212-ELFENBEIN ~~(SEALED)~~

UNITED STATES OF AMERICA,

    v.

                                   Charging District's Case No. 24-mj-226

Sanjay Kaushik,
(USM# 13911-506)
_____/

### COMMITMENT TO ANOTHER DISTRICT

    The defendant has been ordered to appear in the District of Oregon.

_____ *Not appointed* _____     was    appointed    to    represent

**Defendant for proceedings in this District.**

    The defendant remains in custody after the initial appearance in the Southern District of Florida.

    **IT IS ORDERED** that the United States marshal must transport the defendant, together with a copy of this order, to the charging district and deliver the defendant to the United States marshal for that district, or to another officer authorized to receive the defendant. The marshal or officer in the charging district should immediately notify the United States attorney and the clerk of court for that district of the defendant's arrival so that further proceedings may be promptly scheduled. The clerk of this district must promptly transmit the papers and any bail to the charging district.

    **DONE AND ORDERED** at Miami, Florida on 10/18/2024.

                                     Marty F. Elfenbein
                                     United States Magistrate Judge